831 F.2d 1057
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Earl D. BOONE, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR and Bethlehem Steel
Corporation, Respondents.
 No. 87-2533.
 United States Court of Appeals, Fourth Circuit.
 Argued July 28, 1987.
Decided Oct. 13, 1987.
 
 Harry Goldman, Jr. (Robert G. Skeen on brief) for appellant.
 Thomas E. Cinnamond (Richard W. Scheiner, Semmes, Bowen & Semmes on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Claimant Earl D. Boone appeals from the decision and order of the Benefits Review Board affirming the decision of the administrative law judge denying Boone's claim for modification of benefits pursuant to the Longshoremen's and Harbor Worker s, Compensation Act, 33 U.S.C. Secs. 901 et seq (the Act). Boone is a fifty-two year old former rough carpenter for Bethlehem Steel who sustained an accidental injury on August 8, 1975, when a heavy wood shoring struck him across the back. In February, 1979, the Board granted the claimant a thirty dollar per week loss of wageearning capacity award due to partial permanent disability from a back injury that resulted from the 1975 accident. The Benefits Review Board modified this order in 1980 to include payment of certain medical expenses.
 
 
 2
 Following this award, the claimant continued to work at Bethlehem Steel until 1979, at which point he maintains he was no longer able to work without assistance. On June 25, 1979, he requested that his disability compensation be modified due to deterioration of his back condition and the onset of psychological impairments. The administrative law judge denied the request for modification and this decision was affirmed by the Board. We affirm in part, reverse in part, and remand for a determination of the appropriate increase in the claimant's benefits.
 
 I.
 
 3
 In 1978, Boone brought a claim for disability benefits under the Act, alleging a fifty per cent loss in wage-earning capacity due to the injury to his back which he sustained during the 1975 accident. In a decision dated February 6, 1979, the ALJ concluded that Boone was entitled to compensation of thirty dollars per week after finding that Boone had lost between ten and fifteen per cent of his wage-earning capacity due to the injury to his back. The Board upheld this finding and ordered additional compensation for medical expenses incurred by Boone.
 
 
 4
 In 1982, Boone instituted this action to modify the 1979 order. There are two separate areas of impairment which he states arose from the 1975 accident and which have worsened since 1979 so as to justify an increase in disability benefits. First, claimant contends that the injury to his back has significantly worsened, and second, he maintains that a psychological disability has resulted from the back injury since entry of the 1979 order.
 
 
 5
 The record before the ALJ indicated that five doctors had examined the claimant in connection with the impairment to his back. In August, 1979, Dr. Ventura examined the claimant, obtained an x-ray, and found that the fracture caused by the 1975 injury had healed and that there was no atrophy or significant arthritic change in the injured area of the claimant's spine. Based on this diagnosis, Dr. Ventura concluded that the claimant could return to work provided he did not engage in heavy lifting, defined as lifting twenty or twenty-five pounds. In June, 1979, a company doctor, Dr. Leipold, examined the claimant at work and obtained an x-ray. The results of this examination were negative except for pain upon palpitation of the area of the twelfth dorsal vertebra (T-12), which had been fractured in the 1975 accident.[1]
 
 
 6
 The record also contains medical reports from 1979 through 1981 from Dr. Weaver, an osteopath who had treated the claimant for several years since the injury to the claimant's back. These reports indicated that the claimant suffered from a back impairment and serious back pain, that the claimant was permanently disabled from performing his usual work as a rough carpenter, and that he was capable of bench work with no heavy lifting. During the hearing before the ALJ, Dr. Weaver was questioned regarding deterioration in the claimant's condition since the 1979 award of benefits. He testified that the claimant's condition had deteriorated since 1976 and 1977, but had not changed since his previous 1979 determination of partial disability.
 
 
 7
 Dr. Eli Lippman, in contrast, testified that the claimant's condition had deteriorated since the 1979 finding of disability. Based on an examination in 1978 and 1979, he reported a compression fracture of the T-12 vertebra with almost fifty per cent compression of that segment, along with a compression fracture of the ninth thoracic vertebra. Dr. Lippman concluded that the claimant suffered from a permanent thirty-five per cent disability of the spine.
 
 
 8
 Contravening the report of Dr. Lippman, Dr. Thomas Hunt found, following an examination in October 1979, and in 1982, that the claimant's condition had significantly improved. He reported that the area of the spinal fracture had stabilized and that this stability was enhanced by spontaneous fusion of the eleventh and twelfth vertebrae which had occurred since the 1975 fracture. Dr. Hunt concluded that the claimant suffered from a permanent disability of approximately fifteen per cent, and testified that there was no need to place any restrictions on the claimant's work activities.
 
 
 9
 In contrast to the conflicting evidence regarding the deterioration of the claimant's back injury, the record of the claimant's recent psychological problems is uncontroverted. In June, 1979, Dr. Spodak, a psychiatrist, examined the claimant and performed clinical tests. On the basis of this examination, Dr. Spodak diagnosed the presence of reactive depression and concluded that the claimant was temporarily totally disabled. By July, 1979, Dr. Spodak rated the claimant's disability on the basis of his mental impairment as twenty per cent. More tests were conducted in 1980 which provided Dr. Spodak with further data. He revised his diagnosis and concluded that the claimant suffered from passive aggressive personality traits which were "basically lifelong" and reactive depression which stemmed from problems that Boone encountered as a result of the injury to his back. Dr. Spodak concluded that the claimant could perform low stress work which did not involve an authoritarian relationship and which did not require significant individual decision-making.
 
 
 10
 After reviewing this evidence of record, the ALJ concluded . that the claimant's award of permanent partial disability required no modification. He resolved the conflict in the evidence over the extent of the claimant's back impairment in favor of the Director and the employer. The ALJ determined, based primarily on the report of Dr. Hunt, that the claimant's back condition had stabilized. The ALJ also found that the claimant's psychological impairments were not disabling after refusing to credit the findings and conclusions of the sole psychiatric witness, Dr. Spodak.
 
 II.
 
 11
 Section 22 of the Act, 33 u.S.C. 6 922, authorizes modification of an award of workers' compensation benefits upon application of any party if there has been a change in the claimant's condition. The party seeking modification of a previous award has the burden of proof to demonstrate that a change in condition has occurred. Id. The ALJ's determination on this issue may be reversed only if it is not supported by substantial evidence or is not in accord with the law. John T. Clark & Son, Inc. v. Benefits Review Board, 621 F.2d 93 (4 Cir. 1980).
 
 
 12
 Substantial evidence supported the decision of the ALJ that the claimant's back condition has not deteriorated since 1979. Dr. Weaver, Boone's personal physician, testified that Boone's disability had stabilized since the first hearing. Dr. Hunt testified that the claimant's fractured twelfth vertebra had spontaneously fused with the eleventh vertebra and as a result that the claimant's back had stabilized. Other evidence from Dr. Ventura and Dr. Leipold also suggested that the claimant's condition had not grown worse since 1979.
 
 
 13
 The administrative law judge, and not this court, possesses the authority to resolve conflicts in the medical evidence. Thomas v. Celebreeze, 331 F.2d 541 (4 Cir. 1964)(social security). In performing this duty, the ALJ must explicitly indicate the weight given to all relevant medical evidence and articulate reasons for resolving conflicts in the evidence. Murphy v. Bowen, 810 F.2d 433 (4 Cir. 1987)(social security); Gordon v. Schweiker, 725 F.2d 231 (4 Cir. 1984)(social security). We think that the ALJ fulfilled this task in crediting the weight of medical evidence over the report of Dr. Lippman and that substantial evidence supported this decision.
 
 III.
 
 14
 Substantial evidence did not support, however, the administrative law judge's findings with regard to the claimant's psychological impairments. Psychological injuries are compensable injuries under the Act. Tampa Ship Repair & Dry Dock Co. v. Director, 535 F.2d 936, 938 (5 Cir. 1976). A work-related injury need not be the sole cause of a physical or psychological disability to be compensable; the injury is compensable if it aggravates or combines with a previous infirmity to cause disability. 33 U.S.C. Sec. 908(f); Lambert's Point Docks, Inc. v. Harris, 718 F.2d 644, 647 (4 Cir. 1983)("Benefits should be denied only when it would be unreasonable to say that an injury or disability arose out of claimant's employment").
 
 
 15
 The ALJ refused to credit Dr. Spodak's conclusions because he found that they were based on certain faulty premises. The ALJ found that Dr. Spodak relied on the premise that the claimant's attempts to return to work had met with limited success. The ALJ criticized this finding because the claimant's condition had not caused him to be absent from numerous days of work until he quit work in 1979. The ALJ found that the evidence showed that Boone's difficulties after 1979 were attributable to the claimant's family difficulties. The ALJ concluded on this basis:
 
 
 16
 In situations involving the human psyche all stress has its effect. We can only point to the event that triggers abnormal behavior as the 'cause.' In this case, the cause was not the work injury of August 8, 1975.
 
 
 17
 We do not think that either of the ALJ's reasons for rejecting the findings of Dr. Spodak has a substantial evidentiary foundation. We discuss them seriatim.
 
 
 18
 To find that Dr. Spodak had misinterpreted the claimant's work record prior to 1979, the ALJ isolated a minor portion of Dr. Spodak's recitation of the claimant's work history, and, in our view, misconstrued that statement. On that basis, he then rejected Dr. Spodak's entire diagnosis. In his July, 1979 report, Dr. Spodak stated that the claimant was "unable to perform successfully at work on the basis of his emotional and mental condition through July 6, 1979." During the hearing, Dr. Spodak further testified on this subject:
 
 
 19
 [Boone] indicated that after the injury he made several efforts to return to work. These met with only limited success. He continued in pain. He felt disabled as a result of the pain.
 
 
 20
 In context, these statements do not indicate that Dr. Spodak believed that the claimant had a history of chronic absenteeism. They merely indicate that Dr. Spodak was under the impression, in accord with the claimant's consistent testimony, that the quality of Boone's performance at work declined due to back pain. Moreover, even if Dr. Spodak's testimony is read as construed by the ALJ, the record shows that Boone had a record of unexcused absenteeism which led to a warning from his employer. In 1977, for example, the claimant missed twenty two days of work for unexplained reasons, and, from January 1, 1978 through July 31, 1978, he missed seventeen days of work without excuse.
 
 
 21
 We think that the ALJ misread Dr. Spodak's reports in concluding that they failed to establish a link between the claimant's back injuries and his psychological difficulties. While Dr. Spodak found that some of the claimant's psychological problems were related to family difficulties and underlying personality disorders, he clearly found that the claimant's reactive depression was aggravated by and became disabling because of the hardships associated with the 1975 accident.[2] Dr. Spodak's testimony was quite clear regarding the claimant's psychiatric condition. He testified that:
 
 
 22
 Q So do you have an opinion with reasonable medical probability as to the connection, if any, between Mr. Boone's original injury of August 8, 1979 and his psychiatric disabilities as expressed by you?
 
 
 23
 A Yes. I did.
 
 
 24
 Q What is that opinion?
 
 
 25
 A That the psychiatric disability, at least that component of it, which was the reactive depression was a result of the back injur% gnd the complications he suffered as a result of the injury over the years.
 
 
 26
 As a result of this condition, Dr. Spodak found that Boone was twenty per cent disabled.[3]
 
 
 27
 As Boone's treating physician, Dr. Spodak's conclusions were entitled to substantial weight. Leonard v. Schweiker, 724 F.2d 1076, 1078 (4 Cir. 1983); Mitchell v. Schweiker, 699 F.2d 185, 187 (4 Cir. 1983). Dr. Spodak based his diagnosis on numerous examinations of the claimant as well as a course of treatment of the claimant which began in 1979. In 1979, Dr. Spodak conducted a series of psychological tests which provided the foundation for his diagnosis of reactive depression. In 1980, an extensive psychological evaluation report confirmed this diagnosis by concluding that Boone suffered from psychotic depressive reactions, and also revealed the existence of personality disorders.
 
 
 28
 Thus, we think that the ALJ's conclusion that the claimant is not partially disabled due to his work-related psychological impairments is not supported by substantial evidence, or indeed any medical evidence. Instead, the ALJ's findings improperly substituted the ALJ's own medical judgment of the claimant's condition for that of the uncontradicted medical evidence of record.
 
 
 29
 The uncontroverted evidence from Dr. Spodak indicated that the claimant is unable to return to his former work. After it has been demonstrated that an employee is no longer able to return to his usual employment, the burden shifts to the employer to demonstrate the availability of suitable alternative employment through the use of appropriate vocational evidence. Newport News Shipbuilding and Drydock Company v. Director, 592 F.2d 762 (4 Cir. 1979); Trans-State Dredging v. Benefits Review Board, 731 F.2d 199, 201 (4 Cir. 1984). During the hearing before the ALJ, a vocational and educational consultant, Daniel Mauchline, testified that, taking into account Boone's physical and psychiatric limitations, there were 41 different types of jobs that the claimant could perform, such as a cashier or security guard. Thus, the record indicates that the Director and the employer met their burden of proof and that claimant's partial disability due to psychiatric impairment is not totally disabling.
 
 
 30
 On remand, there is no need for reconsideration of whether the claimant is totally disabled; that he is not has been finally established. But the only evidence does compel the conclusion that Boone has a partial permanent psychiatric disability. We therefore direct that, on remand, claimant's level of benefits be increased to account for this disability.
 
 
 31
 AFFIRMED IN PART;
 
 
 32
 REVERSED IN PART;
 
 REMANDED FOR FURTHER PROCEEDINGS
 
 
 [1]
 The claimant testified during the hearing before the ALJ that Dr. Leipold stated following this examination, "I wouldn't have put you back to work in the first place. I don't need this damn job." Dr. Leipold testified that he did not remember making this statement or any other details concerning his examination of the claimant. We agree with the ALJ that it was unnecessary to resolve this conflict in the evidence to decide the issue of the extent of the claimant's back injury
 
 
 [2]
 Dr. Spodak testified at the hearing before the ALJ that:
 I concluded at that time that he had two problems. One was that he has passive aggressive personality traits which were basically lifelong and his style and that accounted for some of his difficulty. The other was that he had some of the problems relating to the injury to his back and that accounted for the other component of his difficulties. (Jt. A. 43-44)
 
 
 [3]
 Dr. Spodak reached this conclusion based on his finding that the claimant was definitely, but only partially disabled. He testified in this regard:
 [H]e clearly had some psychiatric problems, it clearly impaired his ability to do many things and probably to do anything he did it would impair to some extent, but it was clear that psychiatrically he was able to function and do certain things and that it wasn't all that much of a problem. So that is how I arrived at [the conclusion that Boone's disability was] slight. I felt it was about in the middle of the slight range and that is how I came up with 20 per cent.