**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TRACI DURHAM,
Plaintiff-Appellant,

v.

No. 99-1451

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-98-345-3)

Argued: June 9, 2000

Decided: July 27, 2000

Before MURNAGHAN, WILKINS, and WILLIAMS,
Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles William Peraino, Richmond, Virginia, for Appel-
lant. Andrew Charles Lynch, Assistant Regional Counsel, Office of
the General Counsel, SOCIAL SECURITY ADMINISTRATION,
Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** James A.
Winn, Regional Chief Counsel, Patricia M. Smith, Deputy Chief
Counsel, Office of the General Counsel, SOCIAL SECURITY

ADMINISTRATION, Philadelphia, Pennsylvania; Helen F. Fahey, United States Attorney, Joan E. Evans, Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

The claimant, Traci Durham ("Durham"), appeals from the district court's order upholding the Commissioner of Social Security's denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Because the Administrative Law Judge failed to explain adequately the basis for his findings, we vacate and remand.

I.

Durham is a thirty-five-year-old woman who lives in Richmond, Virginia. She has a tenth grade education. Between 1984 and 1994, Durham worked in shipping, receiving, and stocking for various corporations.

On August 28, 1994, Durham fell at her home. After her fall, Durham complained of severe and continuing pain in her lower back, increasing in intensity with movement. Durham was subsequently diagnosed with herniated discs and degenerative disc disease. The continued severity of Durham's back pain led to her receiving decompression surgery on April 10, 1995, as well as poterolateral fusion by posterior iliac crest bone graft. Since her surgery, Durham has improved slightly, but she continues to complain of severe pain. Durham receives treatment at a pain management center twice a month.

On March 8, 1995, Durham filed a claim for DIB and SSI with the Social Security Administration. Durham alleged that because of her

2

lower back pain, she has been unable to work since August 28, 1994. The Virginia Disability Determination Service denied Durham's claim initially and upon reconsideration. The Service found on both occasions that Durham's medical condition was severe, but that it was not expected to last twelve months as required by the Social Security Act. See 42 U.S.C. § 416(i) (defining "disability" as the inability to engage in any substantial gainful activity due to a physical or mental impairment that can be expected either to result in death or to last for a continuous period of more than twelve months).

Durham then requested a hearing before an Administrative Law Judge ("ALJ"). The only witnesses at the hearing were Durham and a vocational expert. Durham testified that she was thirty-one years old and a mother of five. Durham's day begins at about 6:00 a.m. when she gets up to get her children ready for school. She helps get her children ready for school between 6 and 9:00 a.m. It appears that she cooks breakfast for her children, but she has to have them get the pots out for her. She then walks her children a block and a half to school. Durham cannot walk the block and a half without resting; she stops after a block and then continues on to the school.

After returning from walking her children to school, Durham starts to do the breakfast dishes and begins to plan her children's dinner. During the rest of the morning, Durham occasionally does "a little bit of dusting," on things that are on a level height. A.R. 37. When Durham is finished dusting, she takes her medicine and has to sit down with a heating pad for an hour. In the afternoon, Durham sits with the heating pad or lies down until her children come home.

Durham's children come home on their own at around 3:15 p.m. In the evening, Durham helps her children with their homework and reads books to them. Durham also does some cooking, but only on top of the stove. She cannot cook in the oven. Durham also lies down for a significant portion of the evening. In total, Durham spends about five hours a day lying down.

Durham testified that the only household chores she can do are cooking and a limited amount of dusting. She cannot do laundry, sweep, vacuum, make beds, or do any yard work. Durham does not go to church or do any other social activities, nor does she do any gro-

3

cery shopping, which a friend does for her. Durham can feed, bathe, and dress herself, although she sometimes needs help putting on her pants and shirts.

Durham also testified about the pain she experiences. She testified that her lower back pain is constantly there. The pain shoots down her leg, causing burning in her feet. If Durham does too much moving, "the pain gets real intense." A.R. 41. She cannot reach out very far or raise her hands above her head because of the pain.

In response to a question by the ALJ concerning how much she can lift at one time, Durham responded that she could lift about four pounds. The ALJ also asked her if she could lift a gallon of milk, and she responded that she could. The ALJ then told her that a gallon of milk weighs eight pounds. On examination by her attorney, Durham clarified that she can only carry a gallon of milk from her refrigerator to a table beside her refrigerator; she cannot carry the milk across the room. Durham also testified that she cannot carry a ten-pound bag of sugar.

The ALJ also asked Durham the following questions about her ability to walk and sit for long periods of time:

> Q: In an eight-hour day, how many hours overall could you stand and walk if you had the ability to sit whenever you needed to?
>
> ALJ: I'm not asking you how many hours you can stand and walk at one time, but rather overall.
>
> CLMT: In overall, with sitting and standing?
>
> ALJ: Yes.
>
> A: Probably about four hours.
>
> Q: And how many hours in an eight-hour day could you sit if you had the ability to shift your position and stand when- ever you needed to? Not at one time, but overall? If you

4

could shift your body and stand whenever you needed to, in an eight-hour day. How many hours overall could you sit?

A: Probably about four. Maybe six. Four to six.

A.R. 45-46. On examination by her attorney, Durham clarified her testimony concerning her ability to sit and stand during an eight-hour day:

Q: Do you think you could alternate between sitting and standing for eight hours a day without lying down at all?

A: No.

. . .

Q: Okay. And you feel that of an eight-hour day you could sit for four to six hours?

A: With moving up and, with moving and getting up, I could probably do that. I'm not saying that it would be guaranteed for five days a week. I could probably do it maybe one day then I, I'm not saying I could do it the next two days. It might take me a while to get myself back together to do it for another day.

Q: So if you sat in a chair for four or six hours out of an eight-hour day, you think that would cause problems for you?

A: Yes.

A.R. 47-48. Durham thus testified that she could not sit for four to six hours a day, five days a week.[1]

_____

[1] A functional assessment completed by Dr. Whitehurst-Cook, Durham's treating physician, supports Durham's testimony concerning her physical limitations. Dr. Whitehurst-Cook found that Durham could carry less than ten pounds occasionally and less than five pounds frequently. Dr. Whitehurst-Cook also found that Durham could not walk or stand for more than twenty minutes at a time or more than twenty minutes in an eight-hour day, and that Durham could not sit for more than fifteen minutes at a time.

5

After Durham's testimony, the ALJ posed the following hypothetical question to a vocational expert:

> Assume you have a person capable of lifting objects weighing up to ten pounds at a time. They have the ability to [sit] for periods of four to six hours in an eight-hour work day, alternating their position. They have the ability to, further ability to be able to stand and walk for periods of up to four hours overall in an eight-hour work day. Considering the claimant's age, education and past work experience you have described, do any jobs exist in significant numbers in the regional [and] national economy, jobs not requiring any significant reaching, handling, climbing, stooping, crouching and jobs avoiding unprotected heights and moving machinery?

A.R. 50. The vocational expert responded that approximately 18,000 "general clerical" positions within the local metropolitan area and over a million "general clerical" positions nationally fit that description.

On October 23, 1996, the ALJ issued a decision denying Durham's application for benefits. The ALJ found that Durham faces severe physical impairment due to herniated discs and back pain. The ALJ also found that Durham's testimony was generally credible; however, he found that her testimony regarding the severity of her impairments and their effect on her functional abilities not to be credible.

The ALJ relied heavily on the part of Durham's testimony where she told him that she could sit for four to six hours in an eight-hour day if she could stand whenever she wanted. The ALJ thus concluded that while Durham was unable to return to her previous employment, she retained the ability to perform sedentary work.

Durham appealed to the Appeals Council. On April 2, 1998, the Appeals Council affirmed the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Durham then appealed the Commissioner's decision to the district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court assigned the case to a magistrate judge, who recommended affirming the ALJ's decision.

6

Durham filed timely objections to the magistrate judge's recommendation. The district court overruled those objections and found that substantial evidence supported the ALJ's decision. The district court therefore granted summary judgment in favor of the Commissioner. Durham appeals, arguing that the ALJ's decision to deny her benefits was not supported by substantial evidence.

## II.

### A.

We review an ALJ's denial of disability benefits to determine whether the ALJ's decision was supported by substantial evidence. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting our "substantial evidence" inquiry. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998).

In evaluating whether Durham was entitled to disability benefits, the ALJ followed the five-step sequential evaluation of disability set forth in the Social Security regulations. Under the regulations, an ALJ must consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether she retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of production and proof during the first four steps of the inquiry. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). If the claimant can carry her burden through the fourth step, the burden shifts to the Commissioner to show that other work is available in the national economy that the claimant can perform despite her condition. See id.

In the instant case, the Commissioner does not dispute that Durham has satisfied the first four steps of the sequential evaluation: Durham

7

has severe back pain that prevents her from returning to her previous employment. The sole issue on appeal therefore is whether the Commissioner has satisfied his burden of establishing that Durham can perform other work that exists in significant numbers in the national economy.

B.

In response to a question by the ALJ, Durham testified that she could stand for four hours in a workday and sit for four to six hours if she could stand up and sit down whenever she wanted to. Durham's testimony on this point was the centerpiece of the ALJ's finding that Durham could perform sedentary work. The ALJ found that

> [b]ased on the entire record, I find that the claimant has the residual functional capacity to lift up to 10 pounds of weight, stand or walk for periods of four hours overall in an eight-hour workday, and sit for periods of four to six hours in an eight-hour workday. These functional abilities are consistent with sedentary work.

A.R. 13.

The ALJ, however, failed to cite any of the contrary testimony adduced by Durham's attorney during his examination. Durham testified that she could not sit for four to six hours a day for five days a week. Rather, Durham testified that she would probably have to rest for two days if she sat for four to six hours on a given workday. Durham also testified that she could not work for eight hours without lying down. The ALJ did not cite any of this testimony in finding that Durham could sit for four to six hours in an eight-hour workday.

The ALJ also failed to explain the basis for his conclusion that Durham was capable of lifting ten pounds. Durham testified at the hearing that she can lift a gallon of milk, which the ALJ claimed weighed eight pounds; however, on examination by her attorney, Durham clarified that she can only lift the milk and place it on a counter next to the refrigerator. Durham claimed that she cannot carry the eight-pound jug across the room. The ALJ failed to explain how his

8

determination that Durham can lift ten pounds is consistent with her claim that she cannot carry a an eight-pound jug of milk more than a couple feet.**2**

Perhaps the ALJ could have rejected Durham's testimony, finding that her explanations to her attorney were a disingenuous attempt to backpedal on her responses to his questions. On the record before us, however, we do not know why the ALJ disregarded parts of Durham's testimony. He may have ignored it; he may have found that it was not credible; he may have decided that he wanted to deny her claim for benefits regardless of her testimony.

We thus are faced with a situation in which we cannot know why the ALJ rejected relevant evidence in the record. In similar situations, we have held that a remand is necessary to clarify the basis for the decision to deny benefits. For instance, in Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984), the court vacated and remanded the ALJ's decision denying benefits, stating that

> [t]he courts . . . face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

Id. at 236 (quoting Arnold v. Secretary , 567 F.2d 258, 259 (4th Cir. 1977) (ellipsis in original)); Murphy v. Bowen , 810 F.2d 433, 437 (4th Cir. 1987) (remanding the case to the ALJ because the ALJ did not explain adequately why he credited one doctor's views over those of another doctor); see also Bill Branch Coal Corp. v. Sparks, 213 F.3d 186 (4th Cir. 2000) (refusing to "guess" at the ALJ's rationale for discounting relevant evidence). The ALJ's failure to explain adequately

_____

**2** Durham also testified that she cannot carry or pour a ten-pound bag of sugar. The ALJ failed to state why he disregarded this testimony in finding that Durham can lift ten pounds.

the basis for his findings thus compels us to conclude that his decision to deny benefits to Durham was not supported by substantial evidence.**3**

III.

The substantial evidence standard of review does not insulate an ALJ's decision from appellate review where, as here, he fails to explain adequately the basis for his findings. We therefore vacate the judgment of the district court and remand with instructions to remand to the ALJ for further proceedings in accordance with this opinion.

VACATED AND REMANDED WITH INSTRUCTIONS
_____

**3** The ALJ's reliance on the vocational expert's testimony is flawed for similar reasons. We have held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). Here, the vocational expert based his opinion on the ALJ's inadequately explained findings. The vocational expert's opinion therefore does not support the ALJ's decision.

10