**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2237**

GARRETT W. FOX,

            Plaintiff - Appellant,

      v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

            Defendant - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Asheville.  Max O. Cogburn, Jr.,
District Judge.  (1:13-cv-00244-MOC-DLH)

Argued:  October 27, 2015          Decided:  December 17, 2015

Before AGEE, FLOYD, and THACKER, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED**: Charlotte Williams Hall, CHARLES T. HALL LAW FIRM, P.C.,
Raleigh, North Carolina, for Appellant.  Jeanne Dana Semivan,
SOCIAL SECURITY ADMINISTRATION, Boston, Massachusetts, for
Appellee.  **ON BRIEF**: Anne M. Tompkins, United States Attorney,
Paul B. Taylor, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Garrett W. Fox ("Appellant") appeals the district court's order upholding the denial of his application for disability insurance benefits and supplemental security income. Appellant argues that the administrative law judge ("ALJ") failed to sufficiently explain his findings, in violation of Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013), and improperly evaluated the medical opinion of Appellant's doctor.

We conclude that the ALJ's opinion failed to provide sufficient reasoning to allow for meaningful judicial review. Accordingly, we vacate the district court's judgment and direct the district court to remand to the agency for further proceedings consistent with this opinion.

I.

A.

1.

Appellant's Medical History

In 2009, Appellant injured his back at work, and over the next year, the pain worsened, progressing into both of his legs. As a result, Appellant could no longer work as a self-employed construction laborer. Beginning in 2010, several physicians diagnosed Appellant with chronic inflammatory demyelinating polyneuropathy ("CIDP") and diabetes. Appellant applied for disability insurance benefits and supplemental

2

security income in March 2011, alleging that the diabetes and CIDP had left him disabled since August 2009.

In 2011, Appellant sought the care of Dr. Rob Armstrong, a neurologist. During a visit to Dr. Armstrong in November 2011, Dr. Armstrong described Appellant's neuropathy as "severe," and having "occur[red] in a persistent pattern." A.R. 329.[1] In March 2012, Dr. Armstrong opined that Appellant's neuropathy caused general fatigue, leg weakness, imbalance, pain, "clear gait difficulties," and sensory deficits, which significantly limited Appellant's physical capabilities. Id. at 339-41.

Dr. Armstrong determined that Appellant had both exertional and non-exertional limitations. Specifically, he determined that Appellant could lift 20 pounds occasionally and lift less than ten pounds frequently. Dr. Armstrong further determined that Appellant could stand for a total of one to two hours during an eight-hour work day, but only five to ten minutes at a time, and he could sit for a total of four to five hours, but only 15 to 30 minutes at a time. Per Dr. Armstrong, Appellant could never perform climbing, balancing, or crouching and could only occasionally stoop, kneel, and crawl, and

_____

[1] Citations to the "A.R." refer to the Administrative Record filed by the parties in this appeal.

3

Appellant's neuropathy also affected his ability to reach, handle, feel, push, and pull. As a result, Dr. Armstrong recommended Appellant avoid heights, moving machinery, temperature extremes, humidity, vibration, and any repetitive activity. He noted that these limitations were normal consequences of neuropathy and described the neuropathy as a "lifelong issue" that would create hardships on Appellant's employment, including causing Appellant to be absent from work "more than four times a month." A.R. 341.

2.

### ALJ Hearing

The Social Security Administration denied Appellant's initial application for disability benefits in June 2011 and his request for reconsideration in September 2011. Appellant then filed a written request for an ALJ hearing. On April 20, 2012, at his hearing, Appellant testified that he was experiencing extensive pain causing him to move very slowly, to have difficulty climbing stairs, and to use a cane to walk.

A vocational expert ("VE") testified that a hypothetical individual with similar limitations to Appellant's could not perform any of Appellant's past relevant work. Next, the ALJ asked the VE to consider the work prospects for a hypothetical individual with the exertional limitations

4

described by Dr. Armstrong. The VE testified that this hypothetical individual would be unemployed.

B.

1.

Evaluation of Disability Claims

Disability claims are considered by using a five-step process. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five steps are evaluated in sequential order, and each is potentially dispositive -- thus, if a determination of disability can be made at any step, the inquiry ceases. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process entails evaluating whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment;[2] (4) could return to his past relevant work; and (5) could perform any other work in the national economy if he cannot return to his past relevant work. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant reaches step

---

[2] The listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Appendix describing the listing of impairments).

three and has an impairment that meets or equals a listed impairment, the claimant will be automatically found disabled and entitled to benefits. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Otherwise, before proceeding to step four, the claimant's residual functional capacity ("RFC") must be determined, which will then be used at steps four and five.[3] See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth, and final, step. See Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015).

## 2.

### ALJ's Decision

The ALJ first determined that Appellant's CIDP and diabetes diagnoses qualified as severe impairments, but thereafter concluded that these impairments were not severe enough to warrant finding Appellant disabled pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. In assessing Dr. Armstrong's treatment of Appellant, the ALJ summarized some, but not all, of Dr. Armstrong's medical notes. The ALJ then stated,

---

[3] A claimant's residual functional capacity is the "most [the claimant] can still do [in a work setting] despite" the claimant's physical and mental limitations. 20 C.F.R. § 404.1545.

6

> Dr. Armstrong's opinion regarding [Appellant's] non-exertional limitations is given some weight because it is supported by medical signs and finding[s], because it is consistent with the medical evidence of record and because it was rendered by a treating source. However, less weight is given to the exertional and manipulative limitations because they are not well[-]supported by the medical record.

A.R. 22.

Ultimately, after considering Appellant's age, education, work experience, and RFC, the ALJ concluded that Appellant was "not disabled" because other jobs existed in the national economy in which Appellant was capable of working. A.R. 23. Appellant appealed to the Appeals Council of the Social Security Administration's Office of Disability Adjudication and Review ("Appeals Council"). The Appeals Council denied Appellant's appeal because it "found no reason under [its] rules to review the [ALJ]'s decision." Id. at 1.

### 3.

### District Court's Decision

Appellant then filed a complaint in the district court. Appellant alleged that the ALJ (1) insufficiently explained the finding that Appellant's CIDP did not meet or equal the requirement of a listed impairment, i.e. Listing 11.14 for peripheral neuropathy, in violation of Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013); and (2) improperly evaluated the

7

medical opinion of Appellant's doctor. Both Appellant and the Commissioner of Social Security ("Commissioner" or "Appellee") moved for summary judgment. The magistrate judge recommended affirming the ALJ's opinion on the basis that the ALJ provided sufficient reasoning to allow for meaningful judicial review, and substantial evidence existed to support the ALJ's findings. The district court adopted the magistrate judge's recommendation and granted Appellee summary judgment. Appellant timely appealed to this court.

II.

We review a district court's grant of summary judgment de novo. Elderberry of Weber City, LLC v. Living Centers-Se., Inc., 794 F.3d 406, 411 (4th Cir. 2015). We "will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015) (internal quotation marks omitted); 42 U.S.C. § 405(g) (The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Gestamp S. Carolina, L.L.C. v. NLRB, 769 F.3d 254, 263 (4th Cir. 2014) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be

less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

## III.

### A.

Here, Appellant relies on our decision in Radford v. Colvin, wherein the ALJ denied a claimant's application for benefits because the claimant did not have qualified impairments. See 734 F.3d 288, 291-92 (4th Cir. 2013). There, the ALJ simply concluded at step three that he "considered, in particular," the impairment listings. Id. at 292. The district court reversed the ALJ's decision after reviewing the record because the "ALJ's opinion failed to apply the requirements of the listings to the medical record," and then the district court proceeded to award benefits to the claimant. Id.

On appeal, we explained, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford, 734 F.3d at 295 (citations omitted); Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 260 (4th Cir. 1977) (ALJ failed to include an adequate discussion "in what amount[ed] to no more than a bare recital that [the ALJ] considered the evidence."). We reasoned that it is best for us

to "remand to the agency for additional investigation or explanation" when we cannot evaluate the record of the basis that underlies the ALJ's ruling. Radford, 734 F.3d at 295 (quoting Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)); see also Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015) ("ALJ's lack of explanation requires remand" when the "ALJ explain[ed] how he decided [the evidence] . . . [with a] vague (and circular) boilerplate statement."). In vacating the district court's decision, we emphasized that it was "not our province -- nor the province of the district court -- to engage in these [fact-finding] exercises in the first instance." Radford, 734 F.3d at 296; see also Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an explanation from the ALJ, "it is simply impossible to tell whether there was substantial evidence to support the determination").

B.

We now turn to the ALJ's finding here and its application of the particular listing. At step three, the ALJ stated, in its entirety,

> Although the claimant has "severe" impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or

10

> equivalent to those of any listed impairment of the Listing of Impairments. In reaching this conclusion, the undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

A.R. 20. In short, the ALJ did not apply findings to the disability listing. Rather, the ALJ engaged in the same conclusory analysis that we found to be unacceptable in Radford. As in Radford, where the ALJ stated that he had "reach[ed] this conclusion" after he "considered, in particular," the listings, in this case, the ALJ's analysis was likewise perfunctory and offered nothing to reveal why he was making his decision. Nor was there any "specific application of the pertinent legal requirements to the record evidence." Radford, 734 F.3d at 295. As a result, the ALJ's findings lack the "necessary predicate" for us to engage in review. Id.

The Commissioner posits that substantial evidence exists to affirm the ALJ's findings; therefore, the error is harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (concluding that "there is no question but that [the ALJ] would have reached the same result notwithstanding" the error). Thus, the Commissioner invites us to review the record and cure the ALJ's deficiency ourselves. See Appellee's Br. 22 (explaining that the relatively sparse record here "does not present a materially ambivalent body of evidence that would prevent meaningful review"). This argument is unavailing and

11

contrary to our established precedent in Radford. We cannot begin to engage in a "meaningful review" when there is nothing on which to base a review.

The magistrate judge recognized the ALJ's failure to provide sufficient reasoning, yet he still engaged in a fact-finding expedition. He stated the "ALJ could have addressed Listing 11.14 in a more specific manner and made this Court's review easier." Fox v. Colvin, No. 1:13-cv-00244, 2014 WL 4987135, at *3 (W.D.N.C. Sept. 8, 2014), adopted by No. 1:13-cv-00244, 2014 WL 4987206 (W.D.N.C. Oct. 7, 2014). In turn, the district court concurred because the magistrate judge "was able to engage in a substantive, meaningful review of the final decision of the Commission despite the ALJ's error." Fox v. Colvin, No. 1:13-cv-00244, 2014 WL 4987206, at *3 n.1 (W.D.N.C. Oct. 7, 2014). Despite both courts' recognition of the ALJ's error, they engaged in an analysis that the ALJ should have done in the first instance. To do so was in error.

Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record.

Inconsistent evidence abounds, and yet the ALJ "leaves us to wonder" in such a way that we cannot conduct "meaningful review." Mascio, 780 F.3d at 638; see also Radford, 734 F.3d at

12

296. Dr. Armstrong states numerous times Appellant's severe limitations: Appellant had (1) walking difficulty; (2) a broad-based gait; (3) absent reflexes in his lower legs; (4) diminished feeling in his legs; and (5) limited coordination, among others. Nonetheless, the ALJ makes no mention of how he discredited these diagnoses (or levelled them with his findings) to conclude "the medical signs show only mild to moderate limitations in his legs." A.R. 21. Because the ALJ's opinion fails to provide any explanation connecting his determination to that of Appellant's failure to meet the listing impairment, the ALJ's analysis was insufficient. See, e.g., Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) ("[I]t is simply unacceptable for the ALJ to adopt one diagnosis over another without addressing the underlying conflict."); Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986) (explaining that the ALJ needs to filter through the evidence and explain "why" the ALJ made the decision); Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam) (stating that an ALJ has a "duty of explanation" of what informed his decision). Accordingly, we must vacate and remand.

C.

Appellant also contends that the ALJ failed to accord adequate weight to Dr. Armstrong's opinion. "Courts typically accord greater weight to the testimony of a treating physician

13

because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (internal quotation marks omitted). Thus, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see also 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

> When denying an application,
>
> > [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996). Because the ALJ failed to give "good reasons . . . for the weight [he] g[a]ve [Appellant's] treating source's opinion" and did not provide any support as to why he was giving the physician less

14

weight in certain areas, the ALJ's analysis was insufficient and merits vacating the judgment.  20 C.F.R. § 404.1527(c)(2).

Here, the ALJ provided "less weight" to Dr. Armstrong's opinion of Appellant's exertional and manipulative limitations because the ALJ believed these limitations were "not well[-]supported by the medical record." A.R. 22.  Such a cursory and conclusory analysis does not provide any reason, let alone a "good reason[]," why the ALJ concluded that Dr. Armstrong's opinion was inconsistent with other medical findings.  20 C.F.R. § 404.1527(c)(2); see also SSR 96-2p, 61 Fed. Reg. at 34,492.  Once more, we are confronted with whether we can give meaningful review to the ALJ's decision.  See Radford, 734 F.3d at 296.  Yet again, we cannot. Accordingly, summary judgment for the Appellee cannot stand.

## IV.

For the foregoing reasons, we vacate the district court's judgment and remand the case with instructions to remand the case to the agency for further proceedings consistent with this opinion.

VACATED AND REMANDED