**Karen Sue HANCOCK, Plaintiff–Appellant,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant–Appellee.**

No. 11–1001.

United States Court of Appeals, Fourth Circuit.

Argued: Oct. 26, 2011.

Decided: Jan. 5, 2012.

**ARGUED:** Jason Lee Wilson, H. Russell Vick & Associates, Greensboro, North Carolina, for Appellant. Gill Paul Beck,

Office of the United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Susan Beller Donahue, Assistant Regional Counsel, Social Security Administration, Boston, Massachusetts, for Appellee.

Before TRAXLER, Chief Judge, and SHEDD and FLOYD, Circuit Judges.

Affirmed by published opinion. Chief Judge TRAXLER wrote the opinion, in which Judge SHEDD and Judge FLOYD joined.

## OPINION

TRAXLER, Chief Judge:

In 2004, Karen Sue Hancock filed an application for supplemental security income ("SSI"), alleging both physical and mental disability. After her claim was denied by the Commissioner of the Social Security Administration, Hancock requested a hearing before the Administrative Law Court. The administrative law judge ("ALJ") denied her claim, and the Appeals Council likewise denied her request for review. Having exhausted her administrative remedies, Hancock filed a civil action pursuant to 42 U.S.C. § 405(g). The district court adopted the magistrate judge's recommendation to grant the Commissioner's motion for judgment on the pleadings. Hancock now appeals the district court's order affirming the Commissioner's denial of her application for SSI. For the reasons that follow, we affirm.

## I.

▆▆▆ "This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir.2005) (per curiam) (internal quotation marks omitted). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Id.* (alterations in original) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater,* 99 F.3d 635, 638 (4th Cir.1996). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Johnson,* 434 F.3d at 653 (alteration in original) (internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks omitted).

## II.

The Commissioner uses a five-step process to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4). The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992) (per curiam). At Step 5, however, the burden shifts to the Commissioner "to produce evidence that

other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In Steps 1 and 2, the ALJ found that Hancock had not engaged in substantial gainful activity since the date of her application for SSI and that she suffered from severe impairments, including low back pain due to degenerative disc disease, status post myocardial infarction, intelligence in the mentally retarded range, and depression with anxiety. In Step 3, the ALJ found that Hancock did not have an impairment that met or equaled one of the listed impairments found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Finally, in Steps 4 and 5, the ALJ found that Hancock could not return to her past relevant work but that other jobs existed in the national economy that she could perform. Based on these findings, the ALJ denied her application for SSI, concluding that she was not disabled within the meaning of the Social Security Act.

The only issue on appeal is whether the ALJ erred by concluding that Hancock's level of cognitive functioning did not meet or equal the listed impairment for mental retardation, Listing 12.05.[1] Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D. At issue in this case was Requirement C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").

The ALJ found that Hancock did not establish any of the three prongs of Listing 12.05C. Although Hancock argues that the ALJ erred with regard to his findings as to each of the three prongs, the Commissioner does not contest Hancock's ability to establish Prong 3. Therefore, we are left to consider whether substantial evidence existed to support the ALJ's findings with respect to Prongs 1 and 2. We address each contention in turn and begin with Prong 2.

## III.

In an effort to satisfy Prong 2, Hancock underwent intelligence testing ordered by the ALJ. The examiner, Dr. Appollo, reported that Hancock had a verbal IQ of 66, a performance IQ of 67, and a full scale IQ of 63. He then concluded that Hancock was functioning in the mild level of mental retardation. At no point during Dr. Appollo's narrative report of the test results did he attest to the validity of the test results or opine that Hancock gave her best efforts.

The ALJ gave Dr. Appollo's opinions little weight and, as a result, found that Hancock did not establish Prong 2. Initially, the ALJ explained this finding only in terms of the failures of the examiner: "Even though Dr. Joseph P. Appollo found the claimant to have an 'apparent' valid IQ score of less than 70, the claimant does not satisfy the requirements of 12.05C since

---

1. For reasons that are unclear in the administrative record, the ALJ did not consider whether any of Hancock's physical ailments, rather than her psychological ailments, met or equaled the requirements of a listed impairment. Hancock does not raise this issue on appeal.

Dr. Appollo never stated that the IQ score was valid or that the claimant gave her best effort." A.R.[2] 19. Later in his decision, however, the ALJ cited other reasons for discrediting the IQ scores:

> I have specifically considered the medical opinion of the consultative psychologist Dr. Joseph Appollo that the claimant was restricted because of her purported low IQ. This is inconsistent with the claimant's actual adaptive functioning as outlined above and with the claimant's treating psychiatrist's notes. Therefore, I am assigning only very limited weight to the opinions of Dr. Appollo.

A.R. 23.

Hancock argues that the ALJ's discrediting of her IQ scores was erroneous for two reasons: (1) the ALJ erred by discrediting the IQ scores based on the examiner's failure to attest to the validity of the results; and (2) the ALJ erred in considering the assessments of treating physicians in discrediting the IQ scores. We begin by examining the import of the examiner's failure to attest to the validity of the IQ scores.

### A.

This circuit permits an ALJ to weigh conflicting IQ test results, *see Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987), but it has not addressed the ability of an ALJ to reject an IQ score that is the only such score in the record. Other circuits, however, permit an ALJ to do so in certain circumstances. *See Lax v. Astrue*, 489 F.3d 1080, 1086–87 (10th Cir.2007) (scores not accurate reflection of intellectual capabilities in light of other evidence); *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir.2003) (scores inconsistent with ability to care for oneself and perform activities of

daily living); *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir.1998) (scores derived from "first and only meeting" with examiner and were inconsistent with record of functional ability and prior medical record); *Muse v. Sullivan*, 925 F.2d 785, 789–90 (5th Cir.1991) (per curiam) (scores inconsistent with job history, past medical records, and showing of good memory; claimant unable to see during examination); *Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir.1986) (per curiam) (scores inconsistent with academic achievement; claimant trying to appear unfavorable). We agree with our sister circuits that an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record.

Having determined that certain circumstances permit an ALJ to discredit an IQ score, we are left to decide whether sufficient circumstances existed in this case. Both parties presume that in discrediting the IQ scores based, in part, on certain failures of the test examiner, the ALJ relied on language in the introductory section to the Disability Listings for Mental Disorders. That language provides that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(D)(6)(a). In light of the Commissioner's decision to use the word "should" rather than "shall," *see* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50746, 50767 (Aug. 21, 2000), Hancock argues that an examiner's failure to com-

**2.** "A.R." refers to the Social Security Administrative Record in this case.

ment on the IQ scores' validity does not mandate that the scores be invalidated.

It is not at all clear whether an examiner's failure to attest to the validity of IQ scores *alone* would be sufficient to support an ALJ's decision to discredit the only IQ scores in the record. However, we need not address that issue in this case. Here, in discrediting the IQ scores, the ALJ relied on the examiner's omission as well as the results' inconsistency with both the claimant's actual functioning and with the notes of treating psychiatrists. These facts bring this case in line with the above-cited cases from the Third, Fifth, Eighth, Tenth, and Eleventh Circuits in which an ALJ discredited IQ scores based on other evidence contradicting them. Accordingly, we conclude that the evidence considered by the ALJ provides sufficient support for the ALJ's rejection of the IQ scores. *See Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior.").

### B.

Hancock argues nonetheless that it was improper for the ALJ to rely on the opinions of treating physicians in concluding that she did not establish Prong 2. Hancock first argues that the ALJ's ordering of IQ tests shows that the existing medical evidence from treating physicians was insufficient. This argument, however, is undermined by the transcript of the administrative hearing, which establishes that the ALJ ordered the exam only because the applicable Disability Listing required a current IQ score and no score was in the record.

Hancock also argues that controlling weight can only be given to medically acceptable diagnostic techniques, *see* 20 C.F.R. § 416.927(d)(2), and submits that the treating physicians' estimates of her intellectual functioning were not based on medically acceptable diagnostic techniques. This argument overlooks the fact that Hancock had the burden in Step 3 to satisfy Listing 12.05 by providing valid IQ scores within the required range. Even assuming Hancock is correct that the treating physicians' techniques were not medically acceptable, the examiner's omission, coupled with the evidence of the claimant's actual functioning, provide sufficient support for the ALJ's rejection of Hancock's IQ scores. *See Popp,* 779 F.2d at 1499 ("[T]est results must be examined to assure consistency with daily activities and behavior.").

### IV.

■ As previously noted, Hancock can prevail only if she establishes that the ALJ erred in his analysis of Prong 1 and Prong 2. Therefore, even if the ALJ's finding concerning Prong 2 of Listing 12.05C did not rest on substantial evidence, we would still be required to affirm the ALJ's decision if his finding with regard to Prong 1 was based on substantial evidence. The ALJ found no deficits in adaptive functioning generally and also found that no deficiency manifested itself before the age of 22. Either finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that Hancock did not satisfy Prong 1. Therefore, we must affirm the ALJ's decision if we find substantial evidence to support his findings with respect to either of the two components of Prong 1 of Listing 12.05C.

### A.

In finding no deficits in adaptive functioning generally, the ALJ concluded that "the claimant has worked several jobs and

performed a variety of tasks which would be expected to be beyond the capacity of a mentally retarded person." A.R. 19. With regard to past jobs, the ALJ found that Hancock previously worked as a battery assembler and a drop clipper.[3] With regard to tasks, the ALJ noted that Hancock has the ability to shop, pay bills, and make change; that she takes care of three small grandchildren at a level of care that satisfies the Department of Social Services; that she does the majority of her household's chores, including cooking and baking; that she is attending school to obtain a GED; and that she does puzzles for entertainment. We believe this evidence was sufficient to support the ALJ's conclusion that Hancock had no deficits in adaptive functioning.

Hancock, however, argues that the ALJ gave too much weight to this evidence. For example, Hancock notes that she attended GED classes only because the Department of Social Services would agree to pay for daycare for her grandchildren. She also emphasizes that although she attended GED classes, she was unable to successfully take any of the GED tests. The ALJ had the duty to find facts and consider the import of conflicting evidence. *See Doss v. Dir., Office of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir.1995). Hancock already presented these arguments to the ALJ, and the ALJ concluded that they did not change his view of Hancock's adaptive functioning. We are not at liberty to "reweigh conflicting evidence ... or substitute our judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (alteration in original) (internal quotation marks

omitted); *see also Smith*, 99 F.3d at 638 ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence.").

### B.

■ As to the ALJ's finding that no deficiency manifested itself during the developmental period, we believe it likewise was supported by substantial evidence. Although the evidence showed that Hancock's grades declined from the fifth to the eighth grades, the ALJ attributed this decline to the fact that Hancock was absent from school for approximately half of that time. Additionally, although Hancock provided evidence of low IQ scores, the ALJ found that the scores were higher than could be expected from someone with mental retardation. Hancock had the burden of proving a deficiency during her developmental years, *see Hunter*, 993 F.2d at 35, and she failed to do so. Accordingly, we hold that the ALJ's finding as to this component of Prong 1 of Listing 12.05C rested on substantial evidence.

### V.

We find that substantial evidence supports the ALJ's conclusion that Hancock is not disabled within the meaning of the Social Security Act. Accordingly, we affirm the district court's grant of judgment on the pleadings in favor of the Commissioner.

*AFFIRMED*

---

3. According to the vocational expert in the administrative proceeding, these jobs are semi-skilled jobs. Hancock argues that this circuit has previously found similar jobs to be consistent with mental retardation in certain circumstances. However, the mere fact that Hancock performed work that could have been performed by a mentally retarded person does not mean that she was mentally retarded. Moreover, in finding no deficits in adaptive functioning, the ALJ also relied on the various tasks that Hancock is able to complete, which, alone, amount to substantial evidence supporting the ALJ's decision.