**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-1583**

_____

SHARON FAYE BRYANT,

              Plaintiff – Appellant,

          v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

              Defendant – Appellee.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Susan K. Gauvey, Magistrate Judge.
(1:11-cv-03083-SKG)

_____

Argued:  March 18, 2014                Decided:  May 9, 2014

_____

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED**: Marcia Ellen Anderson, LAW OFFICE OF MARCIA E. ANDERSON,
LLC, Mount Airy, Maryland, for Appellant.  David Nathaniel
Mervis, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for
Appellee.  **ON BRIEF**: Rod J. Rosenstein, United States Attorney,
Alex S. Gordon, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Sharon Faye Bryant appeals an adverse ruling on her claim for disability insurance benefits and supplemental security income. We hold that substantial evidence supports the denial and affirm.

## I.

On December 15, 2006, Bryant filed a claim for benefits with the Commissioner of the Social Security Administration ("Commissioner"). Bryant contended that she suffered from major depression, panic disorder, generalized anxiety, and post-traumatic stress disorder ("PTSD") with a disability onset date of June 2, 2006. The Commissioner denied her claim initially and on reconsideration. An administrative law judge ("ALJ") likewise denied her claim and the Appeals Council denied her request for review. A federal magistrate judge granted summary judgment to the Commissioner on March 28, 2013, and Bryant timely appealed.

## II.

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). We "must uphold the factual findings of the

2

[ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). In applying this standard, "we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." Id. (internal quotation marks omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Id. In sequence, the Commissioner asks "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id. The claimant bears the burden of proof in steps one through four and the burden shifts to the Commissioner in step five. Id. Additionally, if the claimant's disability can be determined at any step, the inquiry need not continue. Id.

The ALJ found under step one that Bryant was not engaged in substantial gainful employment during the relevant time period. Under step two, the ALJ determined that Bryant suffered from bipolar disorder, PTSD, generalized anxiety disorder, borderline personality disorder, and alcohol abuse disorder, and that these impairments were "severe." However, the ALJ found under step

3

three that Bryant's conditions did not meet or equal the listed impairments under the applicable regulations. The ALJ then calculated Bryant's residual functional capacity ("RFC"), which measured her ability to work despite her impairments. Using Bryant's RFC, the ALJ determined under step four that she could not return to any of her previous jobs but, under step five, could perform jobs currently available in the national economy and thus was not disabled within the meaning of the Social Security Act.

Bryant argues that the ALJ erred by not considering "major depressive disorder" as a severe impairment under step two, improperly evaluating evidence of Bryant's impairments under step three, and failing to properly consider certain medical reports when calculating her RFC. We address each of these arguments in turn.

A.

Bryant argues that the ALJ erred in not considering "major depressive disorder" as a severe impairment under step two of the disability claim determination process. This step requires that the ALJ determine whether the claimant suffered from a "severe impairment" or "combination of impairments" that "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Contrary to Bryant's contention, her "major depressive disorder"

4

was taken into account. The ALJ found that Bryant satisfied this step of the disability claims process because she suffered from five severe impairments, one of which was bipolar disorder. The magistrate judge noted that, medically speaking, a "diagnosis of bipolar disorder is inclusive of the symptoms of major depressive disorder and, therefore, the two disorders are mutually exclusive." J.A. 22. Furthermore, the record reveals that although the ALJ did not specifically find that Bryant suffered from "major depressive disorder," the ALJ discussed Bryant's history of depression under steps two and three and when determining her RFC. Thus, we find no merit in this assignment of error.

## B.

Bryant also contends that the ALJ erred under step three, which requires the ALJ to compare the claimant's conditions to the Listings of Impairment ("Listings") to determine if her conditions are medically severe enough to warrant a presumption of disability. Specifically, Bryant maintains that the ALJ erred under Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.08 (Personality Disorders) for three reasons: first, that the ALJ wrongly found her impairments caused her "moderate" rather than "marked" limitations, second, that the ALJ did not consider evidence that she had suffered repeated and extended episodes of decompensation and, third,

5

that the ALJ incorrectly ruled that she was capable of working outside her home.

First, Listings 12.04, 12.06, and 12.08 each contain an identical "Paragraph B," which provides that a claimant may prove disability by showing, among other things, any two of these limitations: "(1) [m]arked restriction of activities of daily living; or (2) [m]arked difficulties in maintaining social functioning; or (3) [m]arked difficulties in maintaining concentration, persistence, or pace; or (4) [r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. § 404, Subpart P, App. 1. The Listings define "marked" as "more than moderate but less than extreme." Id. The ALJ evaluated the evidence and determined that Bryant suffered only "moderate" restrictions because she could, among other things, take care of her personal needs around her house, run short errands on her own, and focus while watching the news and reading the newspaper. We decline to disturb the ALJ's finding that Bryant failed to prove her disability under Paragraph B because it is supported by substantial evidence.

Second, Listing 12.04 provides an alternative basis for a claimant to prove disability, part of which requires the claimant to prove that she suffered "[r]epeated episodes of decompensation, each of extended duration." Id. "Episodes of decompensation" are defined as "exacerbations or temporary

6

increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Id. To qualify as "repeated" and of "extended duration," the claimant must suffer "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." Id.

The ALJ found that Bryant had experienced only one to two episodes surrounding her hospitalization in June 2006 for suicidal thoughts and alcohol abuse. Bryant argues that the ALJ should have considered a change in her medication that happened in early 2007. But while episodes of decompensation may be inferred from "significant alteration in medication," id., the ALJ properly declined to analyze Bryant's change in medication because it did not result in any exacerbation of her symptoms.

Bryant also contends that the ALJ erred by failing to consider a series of hospitalizations that allegedly occurred before the onset of her impairments. The record contains bare statements that Bryant had been hospitalized on prior occasions, but no details about them. It was undoubtedly the ALJ's duty to consider these statements. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). However, Bryant bore the burden of proving she was disabled under step three, and she did not offer any specific evidence about the alleged hospital stays nor did she

7

request that the ALJ seek such evidence. Furthermore, even if the ALJ had obtained records from the past hospitalizations, they occurred far enough before the onset of her impairments to be of limited relevance to her claim. Indeed, the record already contained Bryant's medical records from as early as December 2004, two full years before she filed her claim.

Lastly, Listing 12.06 contains an alternate provision allowing a claimant to prove disability if she suffers from, among other things, a "complete inability to function independently outside the area of [her] home." 20 C.F.R. § 404, Subpart P, App. 1. After reviewing the evidence, the ALJ found that Bryant's impairments were not so severe. We agree because the record shows that Bryant could perform limited activities outside of her home, such as running short errands on her own, and we thus decline to overturn the ALJ's finding.

In sum, we uphold the ALJ's finding that Bryant was not disabled under step three because her impairments did not meet or equal any of the Listings.

C.

Finally, Bryant challenges the ALJ's determination of her RFC. When determining a claimant's RFC, the ALJ considers all of her impairments, even if they are not "severe," and reviews "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a). In Bryant's case, the ALJ evaluated numerous

8

medical reports, including those written by Bryant's treating physician, Dr. Gergana Dimitrova, as well as two state agency consultants. Dr. Dimitrova's report in July 2007 contained a Psychiatric Note that stated Bryant "continues to not be able to work due to her paranoia and her depression." J.A. 29-30. The ALJ could not determine whether that statement was made by Dr. Dimitrova or Bryant herself and found that, regardless, the statement was too ambiguous to provide a useful assessment of the activities Bryant could or could not perform given her impairments. Thus, the ALJ gave Dr. Dimitrova's statement "little weight."

The magistrate judge found that, because Dr. Dimitrova was Bryant's treating physician, the ALJ erred under 20 C.F.R. § 404.1527(c)(2) by not giving her statement more weight. However, the magistrate judge found that the error was harmless because Dr. Dimitrova's opinions were thoroughly evaluated by the ALJ, were discussed by the two state agency consultants in their reports, and were consistent with the other medical evidence. The magistrate judge also found that the ALJ erred by failing to discuss a report written by consultative examiner Dr. Jethalal Harkhani in February 2007. See 20 C.F.R. § 404.1527(c) (obligating ALJs to "evaluate every medical opinion" they receive). The ALJ found this error harmless as well because Dr. Harkhani's report was discussed by the two state agency

9

consultants and was consistent with the medical evidence on the record.  We likewise find the ALJ errors harmless and affirm the ALJ's determination of Bryant's RFC.

## III.

It is the ALJ's responsibility to find the facts and weigh the evidence.  We decline to overrule those determinations in this case because substantial evidence supports them.

AFFIRMED

10