<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-1578**

_____

AMY SHARP,

                Plaintiff - Appellant,

      v.

CAROLYN W. COLVIN, Acting Commissioner, Social Security
Administration,

                Defendant - Appellee.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Henry E. Hudson, District
Judge.  (3:14-cv-00340-HEH)

_____

Argued:  September 20, 2016      Decided:  November 14, 2016

_____

Before KEENAN, FLOYD, and THACKER, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Keenan wrote the
opinion, in which Judge Floyd and Judge Thacker joined.

_____

**ARGUED**: Bruce Knight Billman, Fredericksburg, Virginia, for
Appellant.  Elizabeth Wu, OFFICE OF THE UNITED STATES ATTORNEY,
Richmond, Virginia, for Appellee.  **ON BRIEF**: Dana J. Boente,
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Alexandria, Virginia; Nora Koch, Acting Regional Chief Counsel,
Victor Pane, Supervisory Attorney, Maija DiDomenico, Assistant
Regional Counsel, Office of the General Counsel, SOCIAL SECURITY
ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Amy Sharp appeals from the district court's judgment upholding a decision of the Social Security Administration (Social Security), which denied her application for disability insurance benefits. Citing our decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Sharp primarily argues that the Administrative Law Judge (ALJ) committed reversible error in using his assessment of her residual functional capacity (residual capacity) when evaluating her credibility and the opinion of her treating physician.

Upon our review, we conclude that although the ALJ erred in certain aspects of his analysis, those errors were harmless because (1) the ALJ sufficiently explained his decision regarding the weight he accorded the treating physician's opinion, and (2) substantial evidence supported the ALJ's credibility determination. Accordingly, we affirm the district court's judgment.

I.

We begin by describing the five-step sequential evaluation required by regulation that an ALJ must use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a)(4). The ALJ must assess whether: (1) the claimant has been engaged in "substantial gainful activity"; (2) the claimant has

3

impairments that meet the regulations' severity and duration requirements; (3) the impairments meet or equal an enumerated impairment; (4) the claimant is unable to perform her past relevant work; and (5) the claimant can perform other work, if she cannot perform her past relevant work. Id. Between steps three and four, the ALJ must assess the claimant's residual capacity, or "the most" the claimant can do in a work setting despite her limitations. Id. §§ 404.1545(a)(1), 404.1520(a)(4). The claimant bears the burden of proof through step four, after which the burden shifts to the Commissioner of the Social Security Administration (Commissioner) to prove step five. Mascio, 780 F.3d at 635; Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013).

If, at step one, the ALJ finds that the claimant has been working or, at step two, finds that the claimant's medical impairments do not meet the severity and duration requirements, the ALJ must conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(ii). However, if the claimant meets her burden at these first two steps, the ALJ considers step three, and either finds that the claimant is disabled because her impairment meets or equals an enumerated impairment, or the ALJ moves on to consider step four. Id. § 404.1520(a)(4)(iii). In step four, if a claimant can perform her past work given her residual capacity, the ALJ will conclude that the claimant is

4

not disabled. Id. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). Otherwise, the ALJ proceeds to step five, which requires that the Commissioner prove that the claimant can perform work that "exists in significant numbers in the national economy," and therefore is not disabled. Id. §§ 404.1560(c)(2), 404.1520(a)(4)(v).

In the present case, the ALJ concluded that Sharp did not meet her burden at step four regarding her ability to perform her past work. As we explain in detail below, the present case concerns the ALJ's erroneous use of his residual capacity determination in evaluating Sharp's credibility and the opinion of her treating physician.

II.

Sharp was diagnosed with fibromyalgia between 2004 and 2005. In September 2006, she began seeing Dr. Charles Gibellato, a physician who is board-certified in the fields of physical medicine and rehabilitation. Dr. Gibellato treated Sharp multiple times per year for a period exceeding five years, until May 2012.

In March 2010, Sharp, then thirty-nine years old, filed a "protective" application for disability insurance benefits, alleging an onset date of September 12, 2008, which she later amended to July 29, 2010. Sharp asserted that she was disabled

5

due to fibromyalgia, chronic fatigue, chronic lower back pain, and irritable bowel syndrome.

Sharp presented her claim in a hearing before the ALJ in September 2012. She testified that she had widespread pain from her upper shoulders to her neck, lower spine, and hips, and behind her legs to her knees. She stated that her pain was unpredictable, and that its location and intensity varied.

Dr. Gibellato's notes indicated that between October 2010 and May 2012, Sharp's symptoms were alleviated by medications and injections, but were aggravated by stress and activity. Dr. Gibellato's notes also reflected that, between October 2010 and May 2012, Sharp reported: (1) that on a ten-point scale, her monthly average pain level ranged between six and eight, and (2) that in the twenty-four hour period prior to her appointments with Dr. Gibellato, she generally had achieved between seventy percent and eighty percent relief of her symptoms, with one instance in which she reported fifty percent relief.

In December 2010, Sharp completed a report for Social Security in which she stated that on "bad days," she experienced high pain levels that prevented her from attempting household activities. She also related that on bad days, she needed a cane to get to the bathroom to use the toilet, and that she could not do much more on such days. Sharp could feed and dress herself, and on "good days," she could perform light household

6

chores, help her son with homework, prepare meals, shop for groceries, and walk outside with her dogs. According to Sharp, she had four or five good days each month.

Dr. Gibellato referred Sharp to Dr. Jennifer Wartella, a licensed clinical psychologist, to receive treatment for the psychological distress Sharp experienced in relation to her chronic pain and depression. Dr. Wartella treated Sharp in September 2011, and recorded that Sharp "tend[ed] to catastrophize her pain."

After Sharp attended a session with a physical therapist in February 2012, the therapist's notes indicated that Sharp demonstrated good potential for rehabilitation. The therapist recommended a treatment plan that included home exercise, heat, and ice. In August 2012, a different physical therapist noted that Sharp's pain levels increased moderately throughout a sixty-minute physical performance test, and recommended a walking program or that she engage in stretching and conditioning.

In a recorded statement in June 2012, Dr. Gibellato opined that in a work environment, Sharp would need to be able to take breaks, to change her position frequently, and to take narcotic medications while working. According to Dr. Gibellato, Sharp could not work in a cold environment, and could only perform work that involved a low level of stress. In September 2012,

7

Dr. Gibellato further stated that while Sharp could perform sedentary work, it was unlikely that she could maintain a routine schedule. He explained that her symptoms would increase and have a cumulative effect over time, requiring her to be absent from her job after working for between two and four days.

Upon considering this evidence, the ALJ concluded that Sharp suffered from fibromyalgia, degenerative disc disease, degenerative joint disease, obesity, and depression. The ALJ further concluded that Sharp could perform sedentary work subject to certain limitations. The ALJ reasoned that while Sharp's impairments were severe, they did not preclude her from performing "all sustained gainful activity." The ALJ's residual capacity assessment stated that Sharp

> was limited to lifting and/or carrying 5 pounds frequently, and 10 pounds occasionally, sitting six hours in an eight hour workday, and standing/walking two hours in an eight hour work day. [Sharp] had to avoid jobs that required production quotas, and involved more than occasional overhead work . . . . Sharp was limited to work that allowed her to change positions once an hour, and work in an inside environment . . . . She was also limited to occasional interaction with peers, supervisors, and the public, and she was allowed to be absent from work about 10 days a year.

Because the ALJ concluded that Sharp could perform her past work as a payroll clerk, the ALJ held that she was not disabled during the relevant time period.

8

In making this determination, the ALJ accorded little weight to Dr. Gibellato's opinion that Sharp could not maintain a routine schedule. The ALJ concluded that Sharp's "reported limitations were not supported by [Dr. Gibellato's] office notes, nor were they consistent with" the ALJ's residual capacity assessment. The ALJ also concluded that Sharp's impairments reasonably could be expected to cause her alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not credible," in part because they were inconsistent with the ALJ's residual capacity determination. The ALJ also stated that Sharp's ability to function was not limited to the degree Sharp alleged because: (1) her subjective complaints were "not fully supported by the objective medical evidence"; (2) she had received "conservative" medical treatment; and (3) her admitted activities of daily living diminished her credibility regarding the frequency, severity, and limiting effects of her symptoms.

After the Appeals Council denied Sharp's request for review of the ALJ's decision, Sharp filed a complaint in the district court seeking review of the Commissioner's final decision denying her request for benefits. A magistrate judge recommended that the district court deny Sharp's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the ALJ's final decision denying Sharp's

application for disability benefits.  The district court adopted the magistrate judge's report and recommendation, and upheld the Commissioner's determination.  This appeal followed.

III.

A.

We first state the well-established standards governing our review of disability determinations.  We must uphold the ALJ's disability determination unless it was based on legal error or, in light of the whole record, is unsupported by substantial evidence.  42 U.S.C. § 405(g); Mascio, 780 F.3d at 634 (citation omitted); Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011). The substantial evidence standard requires more than a scintilla, but may be less than a preponderance, of evidence. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012).  We do not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]."  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (alteration in original) (citation omitted).  When conflicting evidence could lead reasonable minds to differ regarding whether a claimant is disabled, we defer to the ALJ's disability determination.  Hancock, 667 F.3d at 472 (citation omitted).

B.

Sharp contends that the ALJ applied incorrect legal standards (1) in evaluating the weight to be given Dr. Gibellato's opinion; and (2) in assessing Sharp's credibility. Sharp argues that these errors were not harmless and require reversal of the ALJ's disability determination.

1.

Relying on our decision in Mascio, Sharp contends that the ALJ committed reversible error by according little weight to Dr. Gibellato's opinion on the ground that the opinion conflicted with the ALJ's residual capacity determination. In advancing this argument, Sharp acknowledges that the ALJ provided a second reason for assigning little weight to Dr. Gibellato's opinion, namely, that Sharp's "reported limitations were not supported by [Dr. Gibellato's] office notes." However, Sharp contends that this explanation is merely conclusory in nature, does not provide a sufficient basis on which to uphold the ALJ's decision, and, because of its absence of detail, prevents us from engaging in meaningful appellate review.

In addressing this issue, we first observe that an ALJ must accord controlling weight to a treating physician's medical opinion regarding a claimant's ability to work, if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

11

the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see 20 C.F.R. § 404.1527(a)(2). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see generally 20 C.F.R. § 404.1527(c). Ultimately, the ALJ is not bound by a treating physician's opinion that a claimant is disabled or unable to work, because that determination is reserved for the ALJ. See 20 C.F.R. § 404.1527(d)(1).

We agree with Sharp that the ALJ committed legal error in his analysis of the weight to be accorded to Dr. Gibellato's opinion. As we have noted, the ALJ used his residual capacity assessment as one basis for assigning little weight to Dr. Gibellato's opinion. We examined a similar analytical error in Mascio. The ALJ in that case had concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [the claimant's] symptoms [we]re not credible" because they were inconsistent with the ALJ's own residual capacity assessment. Mascio, 780 F.3d at 639.

We explained in Mascio that the ALJ's reasoning conflicted with the agency's regulations. Id. Those regulations require that an ALJ consider a claimant's credibility before determining

12

her residual capacity, instead of permitting the ALJ's determination of residual capacity to serve as a basis for rejecting a claimant's credibility. Id.

The ALJ in the present case similarly erred by concluding that Dr. Gibellato's opinion merited little weight because it was inconsistent with the ALJ's assessment of Sharp's residual capacity. The regulations direct that an ALJ evaluate statements from treating physicians before, rather than after, determining a claimant's residual capacity. 20 C.F.R. § 404.1545(a)(3). Thus, the regulations do not allow an ALJ to consider whether a treating physician's opinion is consistent with the ALJ's residual capacity assessment when determining what weight to accord that physician's opinion. See id. § 404.1527(c)(2).

We further explained in Mascio, however, that an error of this nature may be deemed harmless when the ALJ has provided a sufficient alternate basis for his negative assessment of particular evidence. Mascio, 780 F.3d at 639. Therefore, we must now consider the sufficiency of the ALJ's other stated reason for according less weight to Dr. Gibellato's opinion.

When, as here, an ALJ denies a claimant's application, the ALJ must state "specific reasons for the weight given to the treating source's medical opinion," to enable reviewing bodies to identify clearly the reasons for the ALJ's decision. Social

13

Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34,490, 34,492 (July 2, 1996). Based on our review of the record before us, we conclude that the ALJ provided a second, specific reason that is sufficient to afford such appellate review.

The ALJ did not summarily conclude that Dr. Gibellato's opinion merited little weight. Cf. Monroe v. Colvin, 826 F.3d 176, 190-91 (4th Cir. 2016) (holding ALJ's statement that "the objective evidence or the claimant's treatment history did not support the consultative examiner's findings" precluded meaningful review); Radford, 734 F.3d at 295; DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983). Instead, the ALJ explained why he discredited Dr. Gibellato's opinion, remarking that "the claimant's reported limitations were not supported by [Dr. Gibellato's] office notes." While the ALJ did not cite specific pages in the record, his explanation relied on and identified a particular category of evidence. See generally 20 C.F.R. § 404.1527(c)(2); SSR 96-2p.

Indeed, the record contains substantial evidence supporting the ALJ's conclusion that Dr. Gibellato's opinion did not merit controlling weight. Dr. Gibellato's notes indicated that although Sharp's symptoms were aggravated by stress and activity, medications and injections regularly provided Sharp relief. And, according to Dr. Gibellato's notes, Sharp tolerated injections well and did not experience any

14

complications as a result of these procedures.  Furthermore, his notes indicated that Sharp often reported feeling relief of between seventy percent and eighty percent as a result of the treatments she received.  These notes, considered as a whole, suggested that Sharp could manage her pain and maintain a routine work schedule, and were inconsistent with Dr. Gibellato's contrary opinion.

The ALJ also was entitled to consider whether Dr. Gibellato's opinion was inconsistent with other material evidence, such as (1) Dr. Wartella's opinion that Sharp tended to "catastrophize" her pain, (2) the opinion of one physical therapist that Sharp had good potential for rehabilitation with use of a home exercise program, heat, and ice, and (3) the opinion of another physical therapist that Sharp's problems could be alleviated in part by a walking program, or by stretching and conditioning.  See 20 C.F.R. § 404.1527(c)(2). Based on this other evidence, the ALJ was not obligated to adopt Dr. Gibellato's opinion about Sharp's ability to work.  See id. § 404.1527(d)(1).  Moreover, we may not reweigh this evidence, and we must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether Sharp was disabled.  See Hancock, 667 F.3d at 472; Johnson, 434 F.3d at 653.

15

2.

We next address the ALJ's determination that Sharp's testimony lacked sufficient credibility. Sharp again relies on our decision in Mascio, asserting that the ALJ erred when he concluded that Sharp's descriptions of the intensity, persistence, and limiting effects of her symptoms were not credible, because they were inconsistent with the ALJ's own residual capacity determination. However, Sharp recognizes that the ALJ provided three additional reasons for his credibility determination, including that: (1) Sharp's subjective complaints were "not fully supported by the objective medical evidence;" (2) Sharp's treatment was "conservative;" and (3) Sharp's admitted activities of daily living diminished her credibility regarding the frequency, severity, and limiting effects of her symptoms. Sharp nevertheless maintains that the three conclusions above are not supported by substantial evidence.

We agree with Sharp that the ALJ applied the same incorrect legal standard that we identified in Mascio, by using the ALJ's own assessment of Sharp's residual capacity to assess her credibility. See Mascio, 780 F.3d at 639. As we explained above, the regulations require that the ALJ consider the claimant's credibility before determining her residual capacity, instead of permitting the ALJ's residual capacity determination to serve as a basis for rejecting a claimant's credibility. Id.

16

Nevertheless, we again conclude that this error was harmless, because the ALJ provided sufficient additional reasons for concluding that Sharp's statements about the extent of her limitations were not credible. See id.

In determining the extent to which a claimant's symptoms affect her capacity to perform basic work activities, the ALJ considers, among other factors, the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)-(4); see Johnson, 434 F.3d at 658. The ALJ also considers the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, and whether the functional limitations from those symptoms "can reasonably be accepted as consistent with the objective medical evidence* and other evidence." 20 C.F.R. § 404.1529(c)(4). While we may not make our own credibility determinations, we may review whether substantial evidence supports an ALJ's credibility determination. See Johnson, 434 F.3d at 658.

Here, the ALJ concluded that Sharp's statements about the extent of her limitations were not fully supported by objective

---

* Objective medical evidence includes "medical signs and laboratory findings." 20 C.F.R. § 404.1529(a). Medical signs are "anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements." Id. § 404.1528(b). Laboratory findings are "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. § 404.1528(c).

17

medical evidence. Dr. Gibellato's notes indicated that Sharp's symptoms were alleviated significantly with medications and injections, and that Sharp tolerated the injections well and did not experience any complications. When we consider these notes together with (1) Dr. Wartella's opinion that Sharp tended to "catastrophize" the effects of her symptoms, and (2) the above-stated opinions and recommendations of the two physical therapists who evaluated Sharp, we conclude that substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Sharp's statements regarding the extent of her limitations. See Hancock, 667 F.3d at 472.

The ALJ further observed that Sharp's medical care, which included injections, pain medication, and physical therapy, was "conservative." The ALJ was permitted to make this determination that Sharp's treatment was conservative, and that her course of treatment supported a conclusion that she was able to maintain a routine work schedule. See Wall v. Astrue, 561 F.3d 1048, 1058-60, 1069 (10th Cir. 2009) (concluding that claimant's treatment for pain, which included local anesthetic patches, Motrin, and cortisone injections in her back, was conservative).

Finally, the ALJ concluded that Sharp's reported daily activities were inconsistent with her alleged limitations. The ALJ recognized that Sharp's pain was unpredictable and caused

18

her difficulties. However, the ALJ also considered Sharp's statements that on good days, Sharp could perform household chores and shop for groceries. We may not reweigh this evidence, make credibility determinations, or supplant the ALJ's judgment with our own. <u>Johnson</u>, 434 F.3d at 654. Accordingly, viewing the record as a whole, we conclude that substantial evidence supports the ALJ's credibility determination. <u>See</u> <u>Hancock</u>, 667 F.3d at 472; <u>Meyer</u>, 662 F.3d at 704.

IV.

For these reasons, we affirm the district court's judgment.

<u>AFFIRMED</u>