**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 20-1590**

———————————

LAWRENCE WIEBUSCH,

Plaintiff – Appellant,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant – Appellee.

———————————

Appeal from the United States District Court for the District of South Carolina, at Anderson.  J. Michelle Childs, District Judge.  (8:18-cv-02639-JMC)

———————————

Argued:  May 4, 2022                                    Decided:  July 27, 2022

———————————

Before GREGORY, Chief Judge, and MOTZ and WYNN, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:**  Dana Wayne Duncan, DUNCAN DISABILITY LAW, S.C., Nekoosa, Wisconsin, for Appellant.  Shannon G. Petty, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania, for Appellee.  **ON BRIEF:**  Brian C. O'Donnell, Acting Regional Chief Counsel, Stephen Giacchino, Supervisory Attorney, Joanne K. Kernicky, Assistant Regional Counsel, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; Peter M. McCoy, Jr., United States Attorney, Tina Cundari, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After suffering from narcolepsy and other health issues that assertedly impacted his employment, Lawrence Wiebusch applied for Social Security disability insurance benefits. An administrative law judge ("ALJ") denied his claim, finding him not disabled for the purposes of the Social Security Act. Wiebusch requested that the Social Security Administration ("SSA") Appeals Council review that denial in light of a single new piece of evidence: a one-page questionnaire that his treating physician did not complete until after the issuance of the ALJ's decision. The Appeals Council denied this request for review, finding no reasonable probability that this new evidence would change the outcome of his application for benefits.

Wiebusch appeals, contending that this questionnaire requires us to conclude that the ALJ's decision lacks substantial evidence and requires a remand. We disagree. Given the wealth of record evidence supporting the ALJ's decision and our deferential standard of review, we must affirm its denial of benefits.

I.

Wiebusch has several health conditions, but as he recognizes, the only one relevant in this appeal is his narcolepsy. *See* Br. of Appellant at 4–5. Narcolepsy can result in excessive daytime sleepiness, causing a person to fall asleep against one's will at unpredictable times. Wiebusch testified that his narcolepsy did not interfere with his work as a corrections officer on the day shift. However, once the prison moved him to the night shift, he fell asleep on the job and was fired in June 2013. He then applied for Social Security disability insurance benefits.

3

After considering a voluminous administrative record and allowing post-hearing document submissions and medical examinations, the ALJ found that Wiebusch had failed to demonstrate that he was disabled within the meaning of the Social Security Act. The ALJ applied the familiar five-step process to make this determination and issued a written decision denying benefits.[1]  *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ found that Wiebusch had not engaged in substantial gainful activity since June 7, 2013, the alleged onset date of his disability. The ALJ also determined that Wiebusch had numerous severe impairments including narcolepsy, but that based on the medical evidence in the record, he did not have an impairment or combination of impairments equal to one of the listed impairments in the regulations. Finally, the ALJ found that Wiebusch has residual functional capacity to perform light work, and based on the testimony of a vocational expert, that jobs that Wiebusch could perform exist in significant numbers in the national economy. Accordingly, the ALJ found Wiebusch not disabled within the meaning of the Social Security Act.

Wiebusch asked the SSA Appeals Council to review this unfavorable decision in light of new evidence: a one-page questionnaire from Wiebusch's treating physician, Dr.

---

[1] This five-step process requires the ALJ to evaluate:  1) whether the claimant is currently engaging in substantial gainful work activity; 2) if not, whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; 3) if so, whether the impairment or combination of impairments is of a severity to meet or medically equal the listed criteria in the regulations; 4) if not, whether the claimant has residual functional capacity — the ability to conduct work activities on a sustained basis despite limitations from the claimant's impairments — to perform the requirements of the claimant's past relevant work; and 5) if not, whether the claimant is able to do any other work considering the claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4).

Geeta Handa, about the impact of his narcolepsy on his ability to work. Dr. Handa had not completed the questionnaire until November 2017, three months after the ALJ's decision denying benefits. The Appeals Council denied the request. The Appeals Council reasoned that the new evidence "does not show a reasonable probability that it would change the outcome of the decision." The Appeals Council's denial makes the ALJ's decision the final decision of the Commissioner for the purposes of judicial review. *See Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

Wiebusch then filed this action in the District of South Carolina; the case was assigned to a magistrate judge. Wiebusch asked the magistrate judge to remand the case to the Commissioner because of the new evidence, i.e., the one-page questionnaire.

The magistrate judge recommended not remanding the case. The magistrate judge noted that for the Appeals Council to review the ALJ's decision on account of newly submitted evidence, the new evidence must be "material" and "there [must be] a reasonable probability that the additional evidence would change the outcome of the decision." 29 C.F.R. § 404.970(a)(5). The magistrate judge explained that "[t]he Appeals Council will only consider additional evidence . . . if [the claimant] show[s] good cause for not informing [it] about or submitting the evidence" to the ALJ. *Id.* § 404.970(b). Assuming Wiebusch demonstrated good cause, the magistrate judge determined that he "ma[de] no argument as to how the questionnaire is new or material, or how there is a reasonable probability that the evidence would change the outcome of the ALJ's decision." Accordingly, the magistrate judge recommended that the district court affirm the ALJ's decision.

5

After considering Wiebusch's objections, the district court accepted the magistrate judge's report and recommendation, affirming the final decision of the Commissioner. The court found that "the Appeals Council did not err in finding that [Wiebusch] lacked good cause to submit the evidence three months after the ALJ's decision and that [he] failed to show a reasonable probability of a different outcome."[2]  Wiebusch then noted this appeal.

## II.

We review a final decision of the Social Security Commissioner to determine whether it is supported by substantial evidence and based on the correct legal standard. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Substantial evidence "means — and means only — 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Hancock*, 667 F.3d at 472 (quoting *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence,

---

[2] As Wiebusch argues, in so holding, the district court erroneously relied on the inapplicable five-day rule. Br. of Appellant at 45–47. "[T]he 5-day requirement applies only to pre-hearing written statements, *not* to post-hearing written statements." Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987–01, 90988, 2016 WL 7242991 (Dec. 16, 2016) (emphasis added). Notwithstanding the inapplicability of the five-day rule, Wiebusch still had to demonstrate good cause for the Appeals Council to review the ALJ's decision on the basis of the newly submitted evidence and that the new evidence showed a reasonable probability of a different outcome. We need not decide whether Wiebusch had good cause because, as explained in text within, the new evidence provides no reasonable probability of a different outcome.

6

make credibility determinations, or substitute our judgment for that of the [ALJ]." *Id.* (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).[3]

Where, as here, the claimant submitted new evidence to the Appeals Council after the ALJ already issued a decision, we review the entire record — including that new evidence — to determine whether the ALJ's decision is based on substantial evidence. *See Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). After considering the entire record including Dr. Handa's questionnaire, we conclude that substantial evidence supports the ALJ's conclusion that Wiebusch is not disabled within the meaning of the Social Security Act.

The ALJ summarized Wiebusch's testimony as follows: Wiebusch testified that "he experiences excessive daytime sleepiness due to narcolepsy . . . [and] this condition causes him to randomly fall asleep 3 to 4 times a day and . . . he will remain asleep for 5 to 15 minutes each time." The ALJ concluded that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." The ALJ also noted that

---

[3] In his discussion of the standard of review, Wiebusch emphasizes the importance of the agency providing an adequate explanation of its decision so that courts can review the decision for substantial evidence. Wiebusch seems to suggest that the Appeals Council failed to provide the required adequate explanation. *See* Br. of Appellant at 16–19. But the Appeals Council does not need to explain or "articulate any findings when it considers new evidence and denies review." *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011). It is the ALJ's decision that must provide an adequate explanation for its denial of benefits, which it did here. We review for substantial evidence the ALJ's decision, not the Appeals Council's denial of Wiebusch's request that the Council review the ALJ's decision due to the newly submitted questionnaire.

"[a]lthough the claimant has received various forms of treatment for his allegedly disabling symptoms of excessive daytime sleepiness and depressed mood, which would normally weigh somewhat in the claimant's favor, the record shows that these symptoms are controlled when he is compliant with prescribed medication."[4]

The new evidence Wiebusch submitted to the Appeals Council is a one-page questionnaire completed by his treating physician, Dr. Handa. The questionnaire does support Wiebusch's appellate position as to the disabling impact of his narcolepsy. But fatally for Wiebusch's appeal, the questionnaire conflicts with a wealth of record evidence including medical evaluations, Wiebusch's own testimony, and the treating physician's treatment notes, which all support the ALJ's decision.

A.

On the questionnaire, when asked, "[w]ith Mr. Wiebusch taking the appropriate level of stimulant medication, is it nevertheless most probable that he would fall asleep at unpredictable times during the working portion of each work day?," Dr. Handa answered "Yes." The only basis Dr. Handa cited for this opinion was two sleep studies performed in 2012 and 2015 — which were already in the record before the ALJ.

---

[4] In his briefing, Wiebusch asserts that the ALJ's reliance on medication noncompliance did not comply with a prior SSA ruling. That ruling requires ALJs to consider possible reasons for medication noncompliance before finding inconsistencies between the person's alleged symptoms and the evidence in the record based on that noncompliance. *See* Br. of Appellant at 40–42. However, as the Commissioner correctly notes, Wiebusch did not present this argument to the district court. *See* Br. of Appellee at 20 n.8. Thus, we do not consider it. *See Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020).

These two sleep studies do not support Dr. Handa's conclusion that Wiebusch's symptoms could not be controlled by an "appropriate level of stimulant medication." The 2012 sleep study states that "the test results demonstrated moderate hypersomnia" and recommends that the patient "[c]onsider treatment with CNS stimulant medication." The 2015 sleep study notes "[e]arly rapid eye movement latency possibly consistent with his diagnosis of narcolepsy." The study concludes that "[t]he patient is already on modafinil for narcolepsy. If hypersomnia is the main issue, this dose may be increased, and his other medications which cause sedation such as hydroxyzine, gabapentin and tramadol may need to be addressed." Neither sleep study suggests that Wiebusch will likely fall asleep during the workday while taking an appropriate level of medication.

Even more problematic for Wiebusch, one of the answers Dr. Handa gave on the questionnaire conflicts with Wiebusch's own testimony at the hearing before the ALJ. On the questionnaire, Dr. Handa agreed that Wiebusch has been "so impaired" since 2012 that it is "most probable that he would fall asleep at unpredictable times during the working portion of each work day" while "taking the appropriate level of stimulant medication." Yet Wiebusch himself testified that in 2012 he "wasn't having any problems on [the] day shift" as a corrections officer.

Moreover, Dr. Handa's treatment notes do not support her statements on the questionnaire. In her treatment notes, Dr. Handa stated that the medication Nuvigil has worked for Wiebusch in the past. She explained that after trying medications required by the Department of Veterans Affairs as the first line of treatment for narcolepsy, she would "consider [a] nonformulary request for Nuvigil that has worked well for [the] patient

9

before." In a subsequent treatment note, Dr. Handa noted that "ongoing EDS from narcolepsy [was] likely related to noncompliance on Adderall." This explicitly ties Wiebusch's symptoms to medication noncompliance.[5] Indeed, Dr. Handa went on to note the importance of "stress[ing] compliance" with Wiebusch. She reiterated that the "next" step would be to "consider [a] nonformulary request for Nuvigil" and that they "discussed" "[s]afety and sleep hygiene."

After another visit, Dr. Handa, in her treatment notes, stated that "excessive daytime sedation from narcolepsy [was] ongoing" despite Adderall. But she also said that "tak[ing] a short power nap . . . appears to hold him through the evening." She gave Wiebusch continued instructions regarding the Adderall and said that Wiebusch "reports modafinil twice a day worked good [and] will continue to monitor." Dr. Handa again noted that she would "next consider [a] nonformulary request for Nuvigil." These treatment notes do not accord with Dr. Handa's answer on the questionnaire regarding the severity of Wiebusch's symptoms while taking an appropriate level of medication. We have previously concluded that this is fatal to a claimant's position. *See, e.g.*, *Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (per curiam) (unpublished) (relying on the treating physician's contradictory treatment notes to discount that same physician's opinion as to the disabling impact of the claimant's condition).

---

[5] "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (citing 20 C.F.R. § 404.1530 ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work. . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled.")).

Wiebusch attempts to rely on the regulation that instructs ALJs to give the opinions of treating physicians controlling weight in disability determinations for claims filed before March 27, 2017. But as his own briefing explains, a treating-physician opinion is only given controlling weight when "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" Br. of Appellant at 23 (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)). Dr. Handa's questionnaire answers meet neither of these requirements. First, her questionnaire answers are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; rather, the sleep studies, the only diagnostic techniques relied on, do not support Dr. Handa's conclusion as to Wiebusch's symptoms when he is on an appropriate level of medication. Second, Dr. Handa's questionnaire answers are at odds with other evidence in the record, including her own treatment notes, which we have detailed above.

Wiebusch next argues that if we do not give Dr. Handa's questionnaire opinion controlling weight, we must nevertheless give it great weight under SSA regulations. Of course, we usually do recognize the great importance of a treating physician's opinion in disability determinations. But, as Wiebusch himself explains, when a treating-physician opinion does not warrant controlling weight, the regulations include several factors that govern the amount of weight the ALJ should give to the opinion. *See* Br. of Appellant at 24–25. These factors include the "supportability" of the opinion by medical evidence and the "consistency of the opinion with the record as a whole." *See* § 404.1527(c)(2)–(6). The questionnaire answers are neither supported by the medical evidence nor consistent

11

with the evidence in the record as a whole.  Rather, the questionnaire answers conflict with the evidence in the record, including the treating physician's own opinions expressed in her treatment notes, the claimant's own testimony, and the sleep studies.

At best, the questionnaire provides only some support for Wiebusch's position in a record that contains a great deal of other evidence contradicting (and undermining) that questionnaire.  That makes our standard of review — substantial evidence — dispositive.  Even accounting for Dr. Handa's questionnaire, there is enough "evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion."  *Biestek*, 139 S. Ct. at 1154 (citation omitted).

Wiebusch insists, however, that our prior decision in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), compels a remand here.  *See* Br. of Appellant at 31–35, 42–43.  In *Meyer*, we did remand the case when the claimant submitted new evidence at the Appeals Council stage.[6]  In doing so, we summarized the governing principle:  "[W]hen consideration of the record as a whole revealed that new evidence from a treating physician *was not controverted by other evidence in the record*, we have reversed the ALJ's decision and held that the ALJ's denial of benefits was 'not supported by substantial evidence.'"  *Meyer*, 662 F.3d at 707 (quoting *Wilkins*, 953 F.2d at 96) (emphasis added).  Here, the new evidence from a treating physician is controverted by a great deal of other evidence in the record.  In

---

[6] *Meyer* presented a unique situation in which the ALJ based the decision to deny benefits on a lack of evidence of "restrictions placed on the claimant by a treating physician."  *Id.* at 703.  But Meyer presented that missing evidence to the Appeals Council. *Id.* at 707.  In contrast, here the ALJ did not base the decision on the absence of any evidence later provided.

12

contrast to *Meyer*, the evidence in this case is so "one-sided" as to require the conclusion that "substantial evidence supports the ALJ's denial of benefits here." *Id*. In short, *Meyer* stands for the proposition that remand may be appropriate in cases where the question of whether substantial evidence supports the ALJ's decision is a close one. But this is not such a case.

III.

After considering the entire record — including Dr. Handa's questionnaire — we conclude that substantial evidence supports the ALJ's decision. The judgment of the district court is

*AFFIRMED*.